AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the

District of Oregon

| | |
|---|---|
| United States of America<br>v.<br>Juan Flores-Plascencia<br><br>*Defendant(s)* | )<br>)<br>) Case No.<br>)    6:19-mj- 159-mk<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____September 4, 2019_____ in the county of _____Lane_____ in the _____ District of _____Oregon_____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 846 and 841 (a)(1) and (b)(1)(A) | Conspiracy to possess with intent to distribute and to distribute controlled substances including 500 grams or more methamphetamne, a Schedule II controlled substance |

This criminal complaint is based on these facts:

The attached affidavit of SA Jack Wilson, which is incorprated herein

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Jack Wilson, Special Agent DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __9/5/19__

_____
*Judge's signature*

City and state: _____Eugene, Oregon_____    Mustafa T. Kasubhai, U.S. Magistrate Judge
*Printed name and title*

**DISTRICT OF OREGON, ss:**         **AFFIDAVIT OF JACK WILSON**

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, Jack Wilson, being first duly sworn on oath, depose and state that:

**Introduction and Agent Background**

1.  I am a Special Agent with the Drug Enforcement Administration (DEA) and have been so employed since December 2002. I am currently assigned to the Bend, Oregon Post of Duty (POD). Previously, I was assigned to the Seattle Field Division, Seattle, Washington, where I worked in various enforcement groups from approximately March 2003 to October 2014. I have completed sixteen weeks of DEA Basic Agent Training at the DEA Academy in Quantico, Virginia. Prior to being employed by the DEA, I was employed by the United States Air Force as a Law Enforcement Specialist from April 1993 to April 1997. While stationed at Malmstrom AFB, Great Falls, Montana, I was assigned to the Air Force Office of Special Investigation (AFOSI) Joint Drug Enforcement Team (JDET) for approximately two-and-a-half years. I was responsible for drug investigations involving members of the military in the State of Montana under the rules of the United States Uniform Military Code of Justice (UCMJ).

2.  In my capacity as a Special Agent, I have conducted investigations of the Controlled Substances Act, that is, Title 21 United States Code, Section 841, *et seq.*, and related offenses. My training and experience have involved, among other things: (1) the debriefing of defendants, witnesses, and informants, as well as others who have knowledge of the distribution and transportation of controlled substances and of the laundering and concealment of proceeds of drug trafficking; (2) surveillance; (3) analysis of documentary and physical evidence; and (4) the "undercover" purchases of controlled substances. In addition, I have participated in federal search

warrants and wiretap investigations, including acting as the case agent and affiant on prior Title-IIII investigations.

3.  I submit this affidavit in support of a criminal complaint charging **Juan FLORES-Plascencia** and **Edgar SALGADO-Romero**, with conspiracy to possess with intent to distribute and distribute controlled substances including 500 grams or more methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 846 and 841(a)(1) and (b)(1)(A). As set forth below, there is probable cause to believe, and I do believe, FLORES-Plascencia and SALGADO-Romero conspired, with other individuals, to distribute methamphetamine and heroin in Oregon.

4.  I am familiar with the facts and circumstances of this investigation based on my personal involvement in this investigation and from oral and written reports made to me by Central Oregon Drug Enforcement Task Force (CODE TF) and Deschutes County Sheriff's Office Street Crime Team. Unless placed in quotes, the statements of individuals are not direct quotes, but rather the essence of what the individual said. I have not included all the details or of every aspect of this investigation to date.

### Applicable Law

5.  Title 21, United States Code, Section 841(a)(1) provides that "it shall be unlawful for any person knowingly or intentionally to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense a controlled substance." Title 21, United States Code, Section 846 provides that "[a]ny person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

**Page 2 – Affidavit of Jack Wilson**

## Statement of Probable Cause

6.   In August 2019, members of the Central Oregon Drug Enforcement Team received information about a person who was supplying methamphetamine that was ultimately being distributed in the Oregon. Law enforcement learned about a possible delivery in Coburg, Oregon on September 4, 2019, and introduced an undercover agent who could participate in the exchange of the drugs. Oregon State Police (OSP) Detective Baird, acting in an undercover capacity traveled to Coburg, Oregon with a known dealer to meet the source of supply at the Shell Gas Station in Coburg. Surveillance was set up by law enforcement in the area of this Shell Gas station.

7.   At approximately 2:50 p.m., Det. Baird was in a vehicle in the parking lot near the Shell Gas station. At approximately 3:13 p.m., law enforcement observed a white in color semi-truck that parked near where Det. Baird was parked. The driver of the truck, who was later identified as FLORES-Plascencia, exited the vehicle carrying a plastic grocery type bag in his hand which he provided to the known dealer and Det. Baird. The bag was later determined to contain methamphetamine  The known dealer provided FLORES-Plascencia with a bag containing pre-recorded buy money ($4385 in US currency). After the exchange, FLORES-Plascencia was arrested.

8.   During the search of FLORES-Plascencia's semi-truck, law enforcement located in the cab approximately 3547 gross grams of heroin, 2012 gross grams of methamphetamine, and 1002 gross grams of cocaine.

9.   During the surveillance of this exchange, law enforcement had observed a blue Chevy Tahoe with a California license plate arrive to the area around the same time as FLORES-Plascencia. This vehicle had parked behind a law enforcement surveillance unit. In this location,

**Page 3 – Affidavit of Jack Wilson**

the driver had a clear view of FLORES-Plascencia's semi-truck and where Det. Baird was parked. When law enforcement arrested FLORES-Plascencia, the surveillance unit noticed the vehicle drive away in the direction of where the arrest had taken place. Based on these factors law enforcement believed that vehicle was involved in counter-surveillance and possibly conducting security for FLORES-Plascencia. The vehicle then departed from the scene where it was followed by law enforcement. It was learned the vehicle was registered out of Bakersfield California, which was the same location the FLORES-Plascencia had traveled from.

10. The vehicle travelled on southbound on I-5, and was driving in excess of 75 MPH. Law enforcement followed the vehicle, and as it went to exit, it went from the number one lane to the exit without signaling. Springfield Police Department (SPD) stopped the vehicle at 1891 Pioneer Parkway East. The driver was identified as SALGADO-Romero. SPD Officer Eric Sorby deployed his K-9 to the exterior of the vehicle where it alerted to the odor of drugs. The vehicle was searched and approximately $32,000 in US Currency was found in the vehicle. This money was wrapped in plastic and bundled with rubber bands. Law enforcement also found two phones. SALGADO-Romero was interviewed by DEA SA Juan Sierra about the money and he indicated it was his money that he was sending to Mexico. SALGADO-Romero gave SA Sierra consent to download the two phones. In one of the phones, law enforcement found FLORES-Plascencia's number – it was listed as "el trailero juan.".

11. DEA SA Sean Cummings and Det. Casper conducted an interview of FLORES-Plascencia. SA Cummings, who speaks Spanish, mirandized FLORES-Plascencia in Spanish prior to any questioning. FLORES-Plascencia stated that he understood his Miranda rights and agreed to answer questions. FLORES-Plascencia said he has brought two separate loads to the truck stop

**Page 4 – Affidavit of Jack Wilson**

in Coburg, OR. FLORES-Plascencia said he was approached approximately four weeks ago, by an unknown male at a truck stop while he was eating his meal. FLORES-Plascencia was offered money to transport drugs to Oregon during his regular job duties as a truck driver. FLORES-Plascencia said he was told to meet near exit 245 near Bakersfield, CA. FLORES-Plascencia was met by an unknown person there who placed a box or a container of some kind into the cab of his truck. Flores was told where he needed to go and what time to be there to exchange or drop off the drugs. FLORES-Plascencia said for this trip he was told to be at the TA truck stop in Coburg, OR at approximately 4 pm. FLORES-Plascencia said he did not know who he was meeting when he arrived to this location. FLORES-Plascencia does not have contact with the purchasers of the drugs prior to the exchange. The setup for the exchange is done by another individual. FLORES-Plascencia said the money he received during this exchange was "his payment for bringing up the drugs." FLORES-Plascencia said he had another stop in Gresham, OR, where he was supposed to meet and drop off the other drugs that were in his tractor-trailer.

12.     FLORES-Plascencia was shown a California's driver's license photo of SALGADO-Romero, who was the driver of the Chevrolet Tahoe that law enforcement had observed conducting counter surveillance of the arrest of FLORES-Plascencia. FLORES-Plascencia positively identified the photograph as the individual whom he had contact with before and after delivering drugs. FLORES- Plascencia spoke with him one time after a drug deal. FLORES-Plascencia said SALGADO-Romero follows him and makes sure the correct person receives the drugs.

**Page 5 – Affidavit of Jack Wilson**

## Conclusion

13. Based on the foregoing, I have probable cause to believe, and I do believe, that Edgar SALGADO-Romero and Juan FLORES-Plascencia, along with others, conspired to possess with intent to distribute 500 grams or more of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 846 and 841(a)(1) and (b)(1)(A). I therefore request that the Court issue a criminal complaint charging SALGADO-Romero and FLORES-Plascencia with conspiracy to possess with intent to distribute and distribute controlled substances in in violation of Title 21, United States Code, Section 846 and 841(a)(1) and (b)(1)(A).

14. Prior to being submitted to the Court, this affidavit and the accompanying complaint was reviewed by Assistant United States Attorney (AUSA) Amy E. Potter and AUSA Potter advised me that in his opinion the affidavit and application are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint.

Jack Wilson
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me this __5__ day of September 2019.

MUSTAFA T. KASUBHAI
United States Magistrate Judge

**Page 6 – Affidavit of Jack Wilson**